CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 1 2 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **Criminal No. 7:07cr00086** |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| **RICHARD HAYES JOHNSON** | ) | **By: Samuel G. Johnson** |
| | ) | **United States District Judge** |

The defendant, Richard Hayes Johnson, is charged in a federal indictment with conspiracy to distribute and with possession with intent to distribute cocaine. This matter is before the Court on Johnson's motion to suppress evidence seized by state authorities pursuant to a search warrant issued by a state magistrate. Johnson maintains that the affidavit supporting the search warrant fails to establish probable cause for the search and that the good faith exception to the exclusionary rule does not save the search. The Court finds it unnecessary to decide whether the affidavit establishes probable cause because it concludes that the search is subject to the good faith exception. Accordingly, the Court denies Johnson's motion.

## I.

On February 15, 2007, a special agent with the Virginia State Police, Charles L. Parsons, obtained a search warrant from a Pulaski, Virginia magistrate to search a motel room at a local Hampton Inn and an automobile described as "a silver Toyota Forerunner with South Carolina registration 343FBY." The affidavit asserted that the following constituted probable cause:

> On 02/15/2007 this Affiant conducted an interview with a Confidential Source of Information (CSI) who told this affiant that individuals known to the CSI as FNU "Jason" LNU (white male), FNU LNU (black male) and FNU "Ricky" LNU (white male) regularly travel from Greenville, South Carolina to Virginia to sell Cocaine, Marijuana, and sometimes other narcotics from hotel/motel rooms.

According to the CSI, he/she knows, from personal knowledge, that these individuals travel to Virginia on a bi-weekly basis with large quantities of narcotics to sell to various individuals in the Pulaski/Radford City area. The CSI further stated that these individuals are often armed with firearms while trafficking narcotics. On at least three occasions since December 2006, the CSI knows that these subjects have traveled to Virginia to sell narcotics. The CSI stated that they usually travel in a vehicle with South Carolina registration. The CSI stated that all, or some, of these subjects will be staying at the Hampton Inn motel in the town of Dublin, Virginia on 02-15-2006, and will have a large amount of narcotics to sell.

On 02-15-2007, members of this affiants investigative team observed a silver Toyota SUV bearing South Carolina registration 343FBY parked in the parking lot of the Hampton Inn in the town of Dublin, Virginia.

On 2-15-2007, members of this affiants investigative team verified that Jason WHITE of 17 Rison Road, Greenville, SC, registered to Room 203 of the Hampton Inn, Dublin, VA. Jason WHITE listed silver Toyota Forerunner as the vehicle registered to Room 203 of the Hampton Inn, in Dublin, VA.

Parsons asserted that he had personal knowledge of the facts set forth in the affidavit and that he was apprised of the facts "in whole or in part, by an informer" who is "familiar with cocaine and marijuana," has admitted to using the drugs, and has "made statements to [Parsons] against his/her penal interest."

With the search warrant in hand, officers searched the motel room and the automobile described in the warrant and retrieved cocaine and other evidence.

## II.

Johnson argues that although the affidavit states that the confidential source of information has "personal knowledge" of the facts that he reportedly provided, it fails to establish that the informant was reliable or provide any specifics as to how the informant knew that the two men identified in the affidavit "would be in Dublin, Virginia, on February 15, 2007, for the purpose of selling illegal drugs." Therefore, he argues, the affidavit not only failed to establish probable cause but was so bereft of indicia of probable cause as to make the officer's belief in its

2

existence unreasonable and demonstrate that the magistrate "totally abandoned his judicial role." It follows, he concludes, that the good faith exception of United States v. Leon, 486 U.S. 897 (1984), does not save the search. This court concludes that the question of probable cause is a close one, and a close question as to whether a warrant is based on probable cause is not grist for the exclusionary rule. Accordingly, the Court denies Johnson's motion to suppress.

In Illinois v. Gates, 462 U.S. 213 (1983), the Supreme Court abandoned the "two-pronged test" established by its decisions in Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli v. United States, 393 U.S. 410 (1969), and in its place "reaffirmed" the totality-of-the-circumstances analysis that "traditionally [had] informed probable-cause determinations." Gates, 462 U.S. at 238. In the Supreme Court's view, the two-pronged test which directed analysis into "two largely independent channels – the informant's 'veracity' or 'reliability' and his 'basis of knowledge'" had "[e]ncouraged an excessively technical dissection of informants' tips, with undue attention being focused on isolated issues that [could not] sensibly be divorced from the other facts presented to the magistrate." Id. at 233-235. It found the totality-of-the-circumstances approach more appropriate than "any rigid demand that specific 'tests' be satisfied by every informant's tip." Id. at 231. According to the Court, under the totality-of-the-circumstances test "probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules. Informants' tips doubtless come in many shapes and sizes from many different types of persons . . . [and] [r]igid legal rules are ill-suited to an area of such diversity." Id. at 232. The ultimate assessment, therefore, is simply an assessment of whether there is "a fair probability that contraband or evidence of a crime will be found in a particular place," Id. at 238, and the issuing

3

magistrate, not the reviewing court, makes that call. The Supreme Court has "repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." Id. at 236. Rather, the issuing magistrate's decision is entitled to "great deference." Id. It follows that this Court's role is "not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." Massachusetts v. Upton, 466 U.S. 727, 728 (1984).

The government argues that probable cause in this case is clear because an informant apprised investigators from his own "personal knowledge" that drug dealers named Jason and Ricky frequently traveled in a vehicle with a South Carolina registration to sell drugs out of motel rooms in the "Pulaski/Radford City area" and that they would be staying at the Hampton Inn in Dublin, Virginia for that purpose.[1] According to the government "this evidence, if true, certainly represents probable cause if there is some indicia of reliability of this information." The government then argues that there are strong indications of reliability:

> First, is the detailed specificity of the information. The information is as to what (cocaine for distribution), when (now), where (Hampton Inn, Dublin, Virginia), who (Jason and Ricky) and it further explains knowledge of a pattern of trafficking over a period of time. Second, the informant's information has increased the credibility because it was being offered by a person who has made multiple statements against his own penal interest and is a self-admitted drug user. Finally, and possibly most importantly, there is substantial additional indicia of reliability based on the corroboration of the informant's information based upon the independent verification by the investigators. The investigators went to the Hampton Inn and located a Toyota vehicle with South Carolina tags. The investigators then determined by records from the Hampton Inn, that an individual named

---

[1] The Supreme Court of Virginia has stated that "the expression 'personal knowledge' is widely used, and there is common acceptance that it means knowledge of a fact which a person has himself gained through his own senses and not from others or from information supplied by others." Fagan v. Commonwealth, 220 Va. 692, 694; 261 S.E.2d 320, 322 (1980).

4

Jason White from Greenville, South Carolina was associated with that South Carolina Toyota.

Johnson counters that the "affidavit is completely devoid of any allegation of veracity or reliability" and that the officer corroborated only "static information" which is "no different than corroborating someone's address, and is of virtually no assistance in establishing probable cause."

The Court agrees, in part, with the government's argument that there is some corroboration bearing on the veracity or reliability of the informant and disagrees with Johnson's argument that the officer corroborated only "static information." Surely, the magistrate could have viewed the verification that an individual named Jason from Greenville, South Carolina had become a registered guest at the Hampton Inn in the town of Dublin, Virginia as an important fact bearing on the confidential informant's credibility and not merely the verification of a static detail as Johnson suggests such as someone's home address. Motels are transient places and information that a particular individual from a particular place in another state will be staying at a particular motel in another state on a particular date is not inconsequential information in determining whether the confidential informant is reliable. The issuing magistrate could have read the affidavit and concluded that the confidential informant had not chronicled an easily knowable existing fact but rather accurately predicted a future event – Jason's arrival – a prediction that could only have been made by a person who was in a position to have inside information. Recognizing the possibility of a more favorable reading would more closely square with the Supreme Court's command to reviewing courts not to determine probable cause *de novo* but rather to determine whether there is substantial evidence in the record supporting the

5

magistrate's decision.[2]   But it is unnecessary, however, for the Court to decide whether there was sufficient corroboration under the circumstances to establish probable cause because the Court, for reasons that follow, holds that the search survives under the good faith exception to the exclusionary rule.

In United States v. Leon, 468 U.S. 897 (1984), the Supreme Court established the good faith exception to the exclusionary rule, holding that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." Id. at 922.  The court then identified four circumstances in which the good-faith exception would not apply: (1) "if the magistrate or judge in issuing a warrant was misled by information and an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth;" (2) if "the issuing magistrate wholly abandoned his judicial role;" (3) if the affidavit supporting the warrant "is so lacking in indicia of probable cause as to render official belief in its existence unreasonable;" and (4) if under the circumstances the warrant is "so facially deficient. . . that the executing officers cannot reasonably presume it to be valid." Id. at 923.  Johnson argues that the circumstances identified in (2) and (3) are present here, thereby precluding application of the "good-faith" exception.  The Court disagrees.

The first question is whether the magistrate "wholly abandoned his judicial role" so as to strip his decision of all deference.  The question is not whether this Court, as a reviewing court,

_____

[2] The fact that the warrant was issued on the same day as the search could be viewed through a suspicious lens, and only corroboration of a static detail.  However, the affidavit states that Jason "will be staying at the Hampton Inn" which the issuing magistrate reasonably could have read, given the timing and sequence of events, to have predicted a future event at the time the informant relayed that information to the officer.

6

disagrees with the magistrate's probabilistic assessment as to whether there was a fair probability that contraband or evidence of a crime would be found in the motel room or the vehicle. It is not whether the magistrate should have issued the warrant but rather whether he "wholly abandoned his judicial role." Although the affidavit does contain some conclusory statements, it also contains some very specific facts expressly based on "personal knowledge" the issuing magistrate could have found to be corroborated in important ways. In short, the circumstances do not suggest that he wholly abandoned his judicial role. The second question is whether the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence unreasonable. Although it is a different question than the first, here the circumstances supporting the court's conclusion that the magistrate did not abandon his judicial role also support the conclusion that the warrant is not so lacking in indicia of probable cause as to render official belief in its existence unreasonable. In essence, the Court finds that the close question of probable cause supports the application of Leon's good-faith exception to the exclusionary rule.

Johnson argues that precedent precludes the government from relying on the good-faith exception. Johnson relies on United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996), which he argues is factually indistinguishable. Once again, the Court disagrees. In Wilhelm, a state magistrate issued a search warrant based upon a police officer's affidavit chronicling brief telephone calls from an informant the officer had never met. The informant had purportedly seen the packaging and selling of marijuana at the defendant's residence. Despite having never met or seen the informant and only having spoken to the informant briefly by telephone the officer attempted to establish the informant's reliability by describing the informant as a "concerned

7

citizen" and a "mature person with personal connections with the suspects" who "projected a truthful demeanor." Id. at 121. Corroboration consisted solely of the officer confirming directions to the home to be searched and his recitation, without any underlying details from the informant, that the informant's description of the substance, packaging and sale was consistent with the officer's knowledge of how marijuana was packaged and sold. The court held that the good-faith exception did not apply due to the "bare bones" nature of the affidavit. Id. at 121. According to the court, under the circumstances, "the state magistrate could not have acted as other than a 'rubber stamp' in approving such an affidavit" and law enforcement officials could not have reasonably relied on the warrant. Id. at 121. It saw the purported corroboration of innocent "static" details to be wholly insufficient. In the court's words: "almost anyone can give directions to a particular house without knowing anything of substance about what goes on inside that house, and anyone who occasionally watches the evening news can make generalizations about what marijuana looks like and how it is packaged and sold." Id. at 121.

The circumstances here bear only a superficial resemblance to the circumstances in Wilhelm. The case does not involve the same troubling efforts to portray an informant the officer had never met as a "concerned citizen" with a "truthful demeanor" and the corroboration is fundamentally different. As the Court has already stated, the magistrate could have viewed the verification that an individual named Jason from Greenville, South Carolina had become a registered guest at the Hampton Inn in Dublin, Virginia as an important fact bearing on the confidential informant's credibility and not merely the verification of a static detail such as someone's home address. Motels are transient places and information that a particular individual from a particular place in another state will be staying at a particular motel in another state on a

8

particular date is not inconsequential information in determining whether the confidential informant is reliable. The issuing magistrate could have read the affidavit and concluded that the confidential informant had not simply chronicled an easily knowable existing fact but rather accurately predicted a future event – Jason's arrival – a prediction that could only have been made by a person who was in a position to have inside information. Accordingly, this Court rejects Johnson's argument that Wilhelm controls and precludes application of Leon's good-faith exception to the exclusionary rule.

**III.**

For the reasons stated, it is **ORDERED** and **ADJUDGED** that Johnson's motion to suppress is **DENIED**.

**ENTER**: This May 12, 2008.

_____
UNITED STATES DISTRICT JUDGE

9
